**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PURCELL BRONSON,** | ) |
|         **Plaintiff** | ) |
| | )   **C.A. 08-52 Erie** |
|         v. | ) |
| | )   **Magistrate Judge Baxter** |
| **MAXINE OVERTON, et al.,** | ) |
|         **Defendants.** | ) |

**OPINION AND ORDER**

Chief Magistrate Judge Susan Paradise Baxter.

I. **INTRODUCTION**

    A. **Relevant Procedural and Factual History**

On February 19, 2008, Plaintiff Purcell Bronson, a prisoner formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"),[1] filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the following Defendants: Maxine Overton, Health Care Administrator at SCI-Albion ("Overton"); Mark Baker, M.D., a physician under contract to perform medical services for inmates at SCI-Albion ("Baker"); Raymond Sobina, Superintendent at SCI-Albion ("Sobina"); and Cindy Watson, Chief Grievance Officer at the Secretary's Office of Inmate Grievances and Appeals, Pennsylvania Department of Corrections ("Watson"). [Document # 3]. Plaintiff subsequently filed an amended complaint [Document # 16] on May 21, 2008, and a second amended complaint [Document # 49] on July 30, 2008.

Plaintiff alleges that he suffers from various physical ailments, including "right knee tendon/ligament tear, relapse of ankle surgery, system-wide arthritis and painful muscle cramps." (Document # 3, Complaint, at Section IV.C.1). Plaintiff claims that, on November 8, 2007, Defendant Baker told Plaintiff that he would order a blood test for Plaintiff and that, once the test results came back, he would discuss the results with Plaintiff and address his medical

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Frackville, Pennsylvania.

concerns; however, Defendant Baker failed to do so. (Id. at Section IV.C.2). Plaintiff alleges that he then submitted sick call slips on November 28 and 29, requesting a physical examination by a doctor, but the slips were not processed. (Amended Complaint at ¶ 3). As a result, Plaintiff filed a grievance concerning the failure to respond to his sick call slips, to which Defendant Overton responded that no requests had been received from Plaintiff since he was last seen by Defendant Baker on November 8, 2007. (Id. at ¶ 4). Plaintiff claims that his "medical health has deteriorated" as a result of Defendants' deliberate indifference to his medical needs in violation of his Eighth Amendment rights. In addition, Plaintiff claims that "Defendants acted with conspiratorial intent to deprive Plaintiff of medical treatment in retaliation for his civil suits against their co-workers." (Id. at ¶ 9). Plaintiff also claims that he was transferred from SCI-Albion to SCI-Mahanoy on July 21, 2008, in retaliation for the filing of this lawsuit. As relief for his claims, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief requiring Defendants to provide him with medical treatment, and further requiring his transfer back to SCI-Albion.

On September 5, 2008, Defendant Baker and Defendants Overton, Sobina and, Watson, filed motions to dismiss [Document # 54 and 56, respectively], asserting that Plaintiff has failed to exhaust his administrative remedies, and in any event, has failed to state a claim upon which relief may be granted. Plaintiff has filed a brief in opposition to Defendants' motions. This matter is now ripe for consideration.[2]

### B. Standard of Review

#### 1. Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure

---

[2] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [Document ## 4, 26 and 27].

2

12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552,

3

555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## II. DISCUSSION

### A. Exhaustion

#### 1. Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a

---

[3]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of

4

technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

### b. Procedural Default Component

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[4] The Circuit explained:

> We believe that Congress's policy objectives will be served by

---

courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

4

There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

5

> interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust the administrative remedies within the DOC's grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the DOC inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate. The first step in the grievance process is for the inmate to file a claim with the institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

### c. **Exhaustion and Procedural Default Applied**

Defendants contend that Plaintiff has failed to exhaust his administrative remedies with regard to his claims against them. (Document # 54 at ¶ 3; Document # 56 at ¶ 1). In support of this contention, Defendants rely upon the Declaration of Tracy Pollock, a DOC Grievance

Review Officer, who declares, in pertinent part, as follows:

> 3. The Department of Corrections maintains a hard copy file and a computer database of all appeals that are made to the Secretary's Office of Inmate Grievances and Appeals. I am the custodian of these records, which are kept in the ordinary course of business.
>
> 4. At the request of the Office of Attorney General, I have reviewed these records and found that [Plaintiff] did not file for final appeal concerning Grievance # 209827 in accordance with policy DC-ADM 804, Inmate Grievance System.
>
> 5. Although Inmate Bronson attempted to effectuate an appeal from the Superintendent's appeal level, he failed to do so as a result of his failure to comply with DC ADM 804 which required a copy of the original appeal to the Facility Manager. Inmate Bronson was issued an Action Required notice indicating that his appeal was incomplete and that he had ten working days to provide all completed documents necessary for conducting final review. Inmate Bronson did not submit any additional documents as per the Action Required notice, therefore, no final appeal of Grievance # 209827 was effectuated.
>
> 6. Furthermore, Inmate Bronson did not file any grievance regarding his transfer from SCI-Albion to SCI-Mahonoy on July 21, 2008.

(Pollock Declaration attached as Exhibit 1 to Document # 56, at ¶¶ 3-6).[5]

Plaintiff has failed to submit any documentary evidence to refute Ms. Pollock's Declaration. Thus, it is clear from the record that Plaintiff has failed to exhaust his administrative remedies with regard to the claims at issue in this case. Moreover, in light of the fact that the challenged events took place between November 28, 2007, and July 21, 2008, Plaintiff has procedurally defaulted on his claims. Accordingly, Plaintiff's claims are not properly before this Court and must be dismissed.

---

[5] Fed.R.Civ.P. Rule 12(b) provides that "[i]f, on a motion ...to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,..." Here, Defendants rely upon Ms. Pollock's Declaration, which this Court has reviewed and considered as part of its determination of Defendants' motions. As a result, Defendants' motions to dismiss will be treated as motions for summary judgment and disposed of in accordance with Rule 56 of the Federal Rules of Civil Procedure.

**III     CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant Baker's Motion to Dismiss [Document # 54], and the Motion to Dismiss filed by Defendants Overton, Sobina, and Watson [Document # 56] are GRANTED, and this case is dismissed.

The Clerk is directed to mark this case closed.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated:  April 14, 2009